```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------
In re

        SCOTT M. MATUSICK                                      06-00903 B

                Debtors                          DECISION & ORDER
-----------------------------------------------------
```
Penney, Maier & Wallach
Mark S. Wallach, Esq., of counsel
169 Delaware Avenue
Buffalo, New York 14202
Attorney for the Chapter 7 Trustee

Christopher J. Tyrpak, Esq.
6161 South Park Avenue
Hamburg, New York 14075
Attorney for the Debtor

Joseph W. Allen, Esq.
Assistant United States Trustee
Suite 401 Olympic Towers
300 Pearl Street
Buffalo, New York 14202

Bucki, Chief U.S.B.J., W.D.N.Y.

The debtor in this Chapter 7 case has objected to the Trustee's final report and to the allowance of various claims. The central issues include the debtor's standing to object to commissions and claims, the calculation of the trustee's commission, and whether claims should be disallowed due to the claimant's failure to submit an assignment or other proof of ownership.

Scott M. Matusick initially filed a petition for relief under Chapter 13 of the Bankruptcy Code on April 20, 2006. At that time, the debtor was unemployed and had recently been terminated from a job with the Erie County Water Authority. Although this court confirmed the debtor's proposed plan on August 28, 2006, subsequent events warranted a conversion of this case. On September 8, 2006, Matusick amended his

schedules and Statement of Financial Affairs to report that he had commenced a pre-petition action against the Water Authority and others for damages resulting from a wrongful termination of employment. Meanwhile, the debtor defaulted in making plan payments. For these reasons, the Chapter 13 trustee moved either to dismiss or to convert this case. As between these two options, the Chapter 13 trustee recommended that the case be converted, in order to allow a trustee in Chapter 7 the opportunity to examine the estate's interest in newly identified assets. Accepting the trustee's position, the court converted this case to Chapter 7 on February 21, 2008.

On March 6, 2008, Scott Matusick amended his bankruptcy schedules to claim an exemption for the debtor's cause of action against the Erie County Water Authority. The Chapter 7 trustee then filed a timely objection to this exemption. At the hearing on that objection, Matusick argued that any recovery would be exempt under NEW YORK DEBTOR & CREDITOR LAW § 282(3)(iv) (McKinney 1990), which provides that a debtor in bankruptcy may exempt "a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." Without more information, however, the court could not determine either the extent of the debtor's reasonable necessities or even that the anticipated judgment would represent only a recovery of lost earnings. Consequently, the court advised the parties that it would defer a decision on the exemption dispute until such time as the District Court might finally determine the merits of the underlying cause of action. Accordingly, on May 13, 2008, this court issued its order directing that "the Debtor's entitlement to an exemption in the foregoing claim shall be determined at a later point in the case and the Trustee has preserved the Bankruptcy Estate's rights to further object to the claim of exemption should that become necessary."

By order dated June 17, 2008, this court granted the trustee's request for authority to appoint as special counsel the same firm that the debtor had retained to represent him in his action against the Water Authority. Litigation then proceeded for nearly six additional

years, and included both a jury trial and appeals. Ultimately, however, the parties agreed to settle the wrongful termination claim, subject to bankruptcy court approval, for the gross sum of $436,710.03. Meanwhile, the trustee and debtor also reached a settlement that would recognize the debtor's claim of exemption with regard to all but $30,000 of proceeds. Accordingly, the trustee moved to approve these settlements as well as to authorize payment of special counsel. After a hearing on notice to all creditors, this court granted an order which approved the trustee's omnibus request and which authorized the trustee to disburse $159,667.23 to counsel for fees and disbursements, as well as $247,042.80 to Scott Matusick on account of his claimed exemption.

The Chapter 7 trustee has now filed a Final Report which includes a statement of his proposed distribution of the moneys that the estate retained from the settlement of the debtor's claims against the Erie County Water Authority. In particular, the trustee requests an allowance of commissions based on distributions of $189,667.23, a sum which includes both non-exempt litigation proceeds of $30,000 and the full amount paid to litigation counsel. Although all creditors received notice of a hearing on the Final Report, the only objection was presented by the debtor himself. Specifically, Scott Matusick challenges the calculation of commissions for the trustee and asserts that the proposed distribution includes payments to creditors whose claims should be disallowed. Consistent with his statement of opposition, the debtor has also filed objections to various claims. Although no creditor has responded to the debtor's claim objections, the trustee asserts that Matusick lacks standing either to object to claims or to challenge the allowances requested in the trustee's final report. The trustee further contends that he has calculated his commissions as the amount allowed under 11 U.S.C. §326(a). The Office of the United States Trustee has filed a Memorandum of Law in support of the trustee's request for compensation.

Debtor's standing to object

The trustee argues that the debtor is not a creditor and therefore lacks standing to object to any claims or proposed compensation. With regard to issues of compensation,

the standing of an objector has no relevance, in that 11 U.S.C. §330(a)(2) provides that "the court may, on its own motion . . . award compensation that is less than the amount of compensation that is requested." With regard to claims, 11 U.S.C. §502(a) states that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." We need not here decide whether a debtor might always be an interested party in his own bankruptcy.[1] In the present instance, the trustee reports that he now holds $30,000, that he has received no priority claims other than for compensation to the trustee and the trustee's general counsel, and that unsecured claims total $27,209.25. Altogether, the debtor wishes to object to the allowance of claims in the aggregated amount of $17,378.58. At the time that the debtor filed his claim objections, this Court had not yet authorized any compensation. Because unchallenged claims are less than assets of the estate, there exists the possibility of a surplus that might inure to the benefit of the debtor. As the potential recipient of a surplus, the debtor remains a party in interest with standing to object to claims.

## Trustee Commissions

Section 330(a)(1) of the Bankruptcy Code recites the basic standard for the compensation of trustees and other officers in a bankruptcy proceeding:

> "After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103 – (A) reasonable compensation for actual, necessary services rendered by the trustee, exam-

---

[1] Even in those situations lacking any reasonable prospect for a return of surplus funds, the Bankruptcy Code seems to contemplate the debtor's involvement in helping to assure an accurate determination of claims. The duties of a debtor include the obligation to file a list or creditors and a schedule of liabilities. 11 U.S.C. § 521(a)(1)(A) and (B). The debtor may file a proof of claim on behalf of any creditor that neglects to do so. 11 U.S.C. § 501(c). Arguably, therefore, with respect to claim objections, a debtor is always a party in interest in his own case.

> iner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses."

11 U.S.C. § 330(a)(1). Fundamentally, therefore, any compensation to a trustee must always represent "reasonable compensation for actual, necessary services," and must otherwise satisfy any other applicable statutory limitations. Further guidance is then provided by 11 U.S.C. § 330(a)(7), which states that "[i]n determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326." Specifically with regard to a trustee in Chapter 7, compensation is subject to the following limitations of 11 U.S.C. § 326(a):

> "In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee, to parties in interest, excluding the debtor, but including holders of secured claims."

By its plain language, section 326(a) provides levels of compensation that are not mandatory, but which the court "may allow" in its discretion at rates not to exceed any of the specified percentages of moneys distributed.

The office of the United States Trustee joins with the case trustee in arguing that permissible levels of compensation under section 326(a) are presumptively reasonable for purposes of allowances under section 330(a). Without necessarily adopting this conclusion in all circumstances, the court does not here question allowance of compensation at the maximum rate of commission. Instead, the trustee errs in calculating the amount of "all moneys disbursed or turned over in the case."

The statutory rates of commission apply only to distributions "in the case." Consequently, an entitlement to commission does not follow only or automatically from the mere passage of money through an account opened in the name of the trustee. We calculate commissions not on the money that a trustee pays out, but on the amount that he distributes or turns over on behalf of the estate. For example, pursuant to section 363(h), a trustee may liquidate jointly owned property. In any such instance, the trustee must allocate the proceeds between any co-owner and the bankruptcy estate. *See* 11 U.S.C. § 363(j). Upon the closing of the case, the trustee will then receive a commission only on the portion allocated to the estate, and not on moneys distributed to the co-owner. *In re Eidson*, 481 B.R. 380 (E.D. Va. 2012). On the other hand, another bankruptcy court authorized commissions on moneys that an escrow agent paid to a secured creditor, even though that payment never passed through any account of the estate. *In re Blair*, 313 B.R. 865 (Bankr. E.D. Cal. 2004), *aff'd* 329 B.R. 358 (B.A.P. 9th Cir. 2005). But just as a trustee may be deemed in certain circumstances to have distributed funds paid by a third party, a debtor may be deemed to have received funds that the trustee has disbursed.

In the present instance, the trustee processed the proceeds of the litigation for wrongful termination of employment. That, however, does not necessarily confirm a distribution of moneys in this bankruptcy case. The trustee concedes that he earns no commission on moneys disbursed to the debtor. *See* 11 U.S.C. §326(a). The issue is how to treat payments to litigation counsel, where those counsel served both as attorneys for the debtor and as special counsel for the trustee. To what extent do the legal fees represent a payment of estate assets on which the trustee properly earns a commission? On the other hand, might a portion of the legal fees be deemed a payment from moneys constructively disbursed to the debtor? In the context of allowing commissions on the proceeds of a personal injury litigation, this court previously considered the allocation of attorney fees as between the bankruptcy estate and a debtor who received a distribution of surplus funds. *See In re Butts*, 281 B.R. 176 (Bankr. W.D.N.Y. 2002). We need not now

Case 1-06-00903-CLB    Doc 194    Filed 12/24/14    Entered 01/07/15 09:15:29    Desc
Main Document      Page 6 of 10

expand the application of that decision, however, because the issue of allocation was resolved as part of the settlements that addressed claims to proceeds of the action for wrongful termination.

On May 6, 2014, the trustee filed an omnibus motion that sought not only to approve a settlement of an action for wrongful termination, but also to approve payments to litigation counsel and a compromise of the debtor's claim of exemption. In paragraph 16 of his motion, the trustee made the following representation:

> "If approved by the Bankruptcy Court, the Debtor has agreed to pay over to the Bankruptcy Estate the sum of $30,000 to be utilized to pay all allowed claims as well as the expenses of administration to the extent of the payment, with any balance remaining to be returned to the Debtor."

In approving the settlement, the court relied upon the trustee's further representation in paragraph 18 of his application, that "[i]nasmuch as the jury award was primarily for lost pay occurring post petition . . . , the proposed settlement is fair and equitable."

Essentially, the settlement provided that the bankruptcy estate would receive only the sum of $30,000 and that the trustee would pay all expenses of administration from that sum. Meanwhile, the settlement made separate provision for the payment of legal fees totaling $159,667.23. Necessarily, these legal fees could only derive from moneys allocated to the debtor. On this, the trustee can receive no commission. Accordingly, the trustee is entitled to a commission only on the sum of $30,000, except to the extent that any portion of that fund is returned to the debtor.

Claim Objections

The debtor has objected to the proofs of claim filed by B-Real, LLC, and by B-Line, LLC. With respect to both claims, the debtor presents a number of arguments, the most compelling of which is that the claimants failed to demonstrate their ownership of the

underlying obligations.  Although the creditors defaulted in responding to the objections, the Chapter 7 trustee opposes the debtor's motion.  He contends that Matusick waived any objection to the claims by reason of his acceptance of their validity for purposes of distributions in Chapter 13.

In schedules filed with his bankruptcy petition, Scott Matusick acknowledged a liability to "Chase / Bank One" in the amount of $6,247, as well as a further liability to "HSBC NV" in the amount of $2,760.  The schedules made no reference to either B-Real, LLC, or to B-Line, LLC.  Nonetheless, B-Real filed a timely proof of claim asserting ownership of a liability previously owed to Chase Bank in the amount of $6,247.94.  Similarly, B-Real asserted a claim in the amount of $2,760.66. for the liability scheduled as owing to HSBC NV.  Thereafter, the Chapter 13 Trustee gave notice to the debtor that the trustee intended to proceed with distributions on account of these and all other filed claims, unless the debtor objected to the claims within thirty days of the trustee's notice.  Although the debtor did not file an objection within the suggested period of time, the case converted to Chapter 7 prior to any payments on account of unsecured claims.

This court is not now asked to decide whether the debtor would have waived any right to challenge a distribution that the Chapter 13 Trustee might have made subsequent to his issuance of a notice of opportunity to object to claims.  Here, no trustee either in Chapter 7 or 13 has yet paid anything on account of claims filed by B-Real and B-Line.  Rather at issue is the right to file a claim objection subsequent to conversion.  On this question, 11 U.S.C. §502(j) sets the controlling standard: "A claim that has been allowed or disallowed may be reconsidered for cause.  A reconsidered claim may be allowed or disallowed according to the equities of the case."  Cause for reconsideration would exist whenever an objector presents valid grounds for the disallowance of a claim.  Moreover, while in Chapter 13, the debtor may have been disinclined to object to a claim that would have received only a small distribution under the confirmed plan.  Now that he

Case 1-06-00903-CLB    Doc 194    Filed 12/24/14    Entered 01/07/15 09:15:29    Desc
Main Document      Page 8 of 10

contemplates a return of surplus from the Chapter 7 estate, the debtor is further justified in pressing an objection which he may previously have been willing to overlook for reasons of practicality.

The court will disallow the claims of B-Real and B-Line, due to the inadequacy of proof regarding ownership.  We acknowledge the general applicability of Bankruptcy Rule 3001(f), which states that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."  To qualify as prima facie evidence, a proof of claim must therefore satisfy the requirements of Bankruptcy Rule 3001(c).  On the date of the filing of the proofs of claim, the applicable version of Rule 3001(c) mandated that claimants attach either a copy of the writing upon which the claim was based, or a statement explaining its loss or destruction.  Because B-Real and B-Line failed to attach the writing or explanatory statement, their proofs of claim fail to satisfy the requirements of Rule 3001(c) and accordingly will not constitute prima facie evidence of the underlying obligations.  But even if the loan documents were attached, the proof of claim would serve only to show the existence of a liability to Chase Bank and HSBC NV.  Without some instrument of transfer, we simply have no evidence that either B-Real or B-Line is now the legitimate owner of a claim.  When a debtor objects to the allowance of a claim asserted by a stranger with no recognized basis of privity, we must apply the holding of *In re Doherty*, 400 B.R. 382, 383 (Bankr. W.D.N.Y. 2009):  "In the absence of sufficient proof of the ownership of a claim, whether it be by a purchaser, transferee or successor-in-interest, that proof of claim can and must be disallowed."

Conclusion

For the reasons stated herein, the objection to the trustee's final report is sustained to the extent that the report seeks commissions on disbursements in excess of $30,000, and to the extent that it proposes distributions on account of claims that are disallowed.  This court has previously sustained the debtor's objection to claims other that those

06-00903B 10

discussed in this opinion.  Now, in addition, the debtor's objection to the claims of B-Real, LLC, and B-Line, LLC, is sustained.  Accordingly, the trustee is directed to prepare a revised final report that incorporates the court's rulings regarding the allowance of both claims and commissions.

    So ordered.

Dated:    Buffalo, New York                        /s/    CARL L.  BUCKI
            December 24, 2014                 Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.

Case 1-06-00903-CLB    Doc 194    Filed 12/24/14    Entered 01/07/15 09:15:29    Desc Main Document      Page 10 of 10